UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TACUMA J. M'WANZA,<br><br>                              Petitioner,<br>    v.<br><br>RENEE BAKER, *et al.*,<br><br>                             Respondents. | Case No. 3:14-cv-00096-LRH-VPC<br><br>ORDER |

This is *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by petitioner Tacuma M'Wanza is before the court for adjudication of the merits.

I.     **Procedural History & Background**

A February 5, 2010 Las Vegas Metropolitan Police ("LVMPD") report reflects the following: police received a report of a person with a gun near a Las Vegas intersection. The caller reported that a man pulled a gun on him and a friend and attempted to rob them. When two officers arrived at the location, they saw M'Wanza, who generally fit the description provided. When the officers identified themselves and ordered petitioner to stop, he refused and continued walking away from the officers. The officers tased M'Wanza and took him into custody. They immediately patted him down and found a .38 caliber revolver in his waistband. Exhibit 2.[1]

On February 10, 2010, the State filed a criminal complaint charging M'Wanza with attempted robbery with use of a deadly weapon, carrying a concealed firearm or

---

[1] Exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 9, and respondents' answer, ECF No. 27, and are found at ECF Nos. 10-11.

1

other deadly weapon, and possession of a firearm by an ex-felon. *Id.* At a preliminary hearing, the State moved to dismiss the attempted robbery with use of a deadly weapon charge. Exhs. 1, 2. On March 12, 2010, the State filed an information charging the two remaining offenses described above. Exh. 3. Petitioner pled not guilty. Exh. 4.

M'Wanza signed a guilty plea agreement on August 3, 2010. Under its terms, he would plead guilty to possession of a firearm by an ex-felon; the parties stipulated that he would be adjudicated a habitual criminal, receive a sentence of 60 to 150 months, would not receive probation, and that the remaining charge of carrying a concealed firearm or other deadly weapon as well as a charge in a separate case would be dismissed. Exhs. 15-17.

The district court held a change-of-plea hearing on August 3, 2010. During the plea canvass, M'Wanza expressed that he felt that he had no choice but to plead guilty to ex-felon in possession of a firearm. Exh. 16, pp. 4-7. The court therefore did not immediately accept his plea and stood in recess for about an hour in order for M'Wanza to discuss the plea with counsel. Once the hearing resumed, M'Wanza stated that he was entering the plea freely and voluntarily, and the court accepted the plea. *Id.* at 7-9.

At the October 7, 2010 sentencing hearing, petitioner informed the court that he had not understood what habitual criminal treatment meant and that if he had understood what it meant he would not have pled guilty. Exhs. 18, 18A. The court requested a transcript of M'Wanza's plea hearing and continued his sentencing. Mwanza's counsel thereafter moved to withdraw and on November 9, 2010, the court granted her motion. Exhs. 19, 20.

On December 2, 2010, the court confirmed Carl Arnold as petitioner's new counsel. Exh. 21. M'Wanza filed a counseled motion to withdraw guilty plea on March 18, 2011. The court denied the motion and entered its order on April 25, 2011. Exhs. 22-25.

///
///

On April 26, 2011 and May 5, 2011, the state district court sentenced petitioner in accordance with the plea agreement to 60 to 150 months with 453 days' credit for time served. Exhs. 26, 27. Judgment of conviction was entered on May 11, 2011. Exh. 28.

M'Wanza filed a *pro se* motion to dismiss Arnold as his counsel based on his alleged failure to file an adequate motion to withdraw plea and his failure to timely file a notice of appeal, which the court granted on August 23, 2011. Exhs. 29, 30.

On November 3, 2011, M'Wanza filed a *pro se* postconviction petition for writ of habeas corpus in state district court, the court appointed counsel, and counsel filed a supplement to the petition and an amended supplement to the petition. Exhs. 31, 33-38. After an evidentiary hearing, the court found that petitioner had been denied a direct appeal, granted a *Lozada* appeal, and dismissed the ineffective assistance of counsel claims. Exh. 39. Notice of entry of order was filed on March 11, 2013. Exh. 40.

On March 11, 2013, M'Wanza filed his notice of appeal from judgment of conviction. Exh. 41. On April 2, 2013, he filed his notice of appeal from the dismissal of his state postconviction petition. Exh. 42. On January 21, 2014, the Nevada Supreme Court affirmed the judgment of conviction and affirmed the district court's dismissal of the postconviction petition. Exhs. 49, 50. Remittiturs issued on February 18, 2014. Exhs. 51, 52.

M'Wanza dispatched his federal petition for writ of habeas corpus on or about February 12, 2014 (ECF No. 4). This court granted respondents' motion to dismiss in part, dismissing grounds 1, 2, 3(B), and several subparts of ground 3(A) (ECF No. 17). Respondents have now answered the remaining grounds (ECF No. 27), and M'Wanza replied (ECF No. 31).

///
///
///
///

3

II. **Legal Standard under the Antiterrorism and Effective Death Penalty Act (AEDPA)**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state

4

court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. **Instant Petition**

Portions of ground 3(A) remain before the court. M'Wanza argues that the cumulative effect of state district court errors violated his Fourteenth Amendment due process rights (ECF No. 4, p. 9). He asserts that the state district court erred by 3(A)(3): failing to inquire into the basis of M'Wanza's statement during the plea canvass that he felt forced to plead guilty; 3(A)(4): relying on non-felonies to adjudicate M'Wanza a habitual criminal; and 3(A)(5): failing to review the entire record to determine the validity of the plea. *Id.*

The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial

fundamentally unfair. *Chambers v. Mississippi*, 410 U.S. 284, 298, 302-03 (1973) (combined effect of individual errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived Chambers of a fair trial").

The Ninth Circuit has held that, in exceptional cases, while no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several trial errors might prejudice a defendant so much that her or his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th Cir. 2003).

A guilty plea must be made knowingly, voluntarily and intelligently; such inquiry focuses on whether the defendant was aware of the direct consequences of his plea. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *see also Brady v. U.S.*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").

The Nevada Supreme Court affirmed the denial of these claims, explaining:

> The district court concluded that, under the totality of the circumstances, appellant's plea was voluntarily and knowingly entered. *See Crawford v. State*, 30 P.3d 1123, 1125-26 (Nev. 2001).  Appellant claims that his attorneys pressured him to take the plea deal by telling him that he had a no-win case and that he would be subject to habitual criminal treatment.  It is not improper for counsel to inform the client of the prosecutor's intent; indeed, it is the role of counsel to provide the client with full and frank advice concerning the potential consequences of both a trial and a plea bargain.  We are unconvinced by appellant's arguments that pressure is implicit from his second counsel's motion to withdraw as attorney of record or that the district court threatened him with trial.
>
> Furthermore, during the plea canvass when appellant stated that he felt he had no choice but to enter into the negotiations, the district court corrected him, informing him that he had the choice of accepting the negotiations or going to trial on all the charges.  The district court indicated that, based on appellant's statements, it would not accept his plea and asked counsel if she wanted to speak with her client, after which appellant chose to plead guilty and indicated that he was entering his plea freely and voluntarily.  *See McConnell v. State*, 212 P.3d 307, 314 (Nev. 2009) (providing that the ultimate decision to plead guilty lies with the defendant).  Appellant signed a written plea agreement that informed him of the consequences of his plea, including his stipulation to adjudication as a habitual criminal, and the district court thoroughly canvassed appellant

6

> regarding his plea and the possible punishments he faced. *See Molina v. State*, 120 Nev. 185, 191, 87 P.3d 533, 537-38 (2004) ("A thorough plea canvass coupled with a detailed, consistent, written plea agreement supports a finding that the defendant entered the defendant entered the plea voluntarily, knowingly, and intelligently." (internal quotation marks omitted)).
>
> Second, appellant argues that the district court abused its discretion in sentencing appellant as a habitual criminal because his prior convictions were stale and trivial and because the decision did not take into account his rehabilitated state nor serve the interests of justice. The district court has broad discretion to dismiss a count of habitual criminality. *See* NRS 207.010(2); *O'Neill v. State*, 123 Nev. 9, 12, 153 P.3d 38, 40 (2007). Our review of the record reveals that the district court understood its sentencing authority, and we conclude that the district court did not abuse its discretion by adjudicating appellant a habitual criminal. *See Hughes v. State*, 116 Nev. 327, 333, 996 P.2d 890, 893 (2000); *see also Arajakis v. State*, 108 Nev. 976, 983, 843 P.2d 800, 805 (1992) ("NRS 207.010 makes no special allowance for non-violent crimes or for the remoteness of convictions."). While appellant likened his prior convictions to those in *Sessions v. State*, 106 Nev. 186, 789 P.2d 1242 (1990) (concluding that the district court's adjudication of defendant as a habitual criminal was an abuse of discretion as the prior convictions ranged from 23 to 30 years old and were for nonviolent crimes), the district court distinguished appellant's case as appellant's prior convictions, incurred between 1981 and 2001, and subsequent non-felony convictions demonstrated a continuation of criminal conduct.

Exh. 49, pp. 1-4. Finally, the Nevada Supreme Court rejected M'Wanza's claim of the cumulative effect of trial court error, concluding that there were no errors to cumulate. *Id.* at 4.

Having reviewed the state-court record, this court determines that M'Wanza has failed to demonstrate that the Nevada Supreme Court's decision on the trial court errors alleged in grounds 3(A)(3)-(5) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

Turning first to ground 3(A)(3) regarding the voluntariness of M'Wanza's guilty plea, the Nevada Supreme Court held that the district court "thoroughly canvassed" M'Wanza. Exh. 49, p. 2. The Supreme Court based its conclusion on the fact that the

district court (1) informed M'Wanza that it was his choice whether to plead guilty or proceed to trial and (2) refused to accept M'Wanza's guilty plea until he had an opportunity to further consult with counsel. Moreover, after the hearing recess, M'Wanza stated in response to the district court's questions that he was entering his plea freely and voluntarily, that no one threatened him in order to get him to plead guilty, and that he understood the potential sentences. M'Wanza has thus failed to demonstrate how the Nevada Supreme Court's decision is contrary to clearly established federal law.

In regards to the habitual criminal sentence at issue in ground 3(A)(4), the Nevada Supreme Court found that the district court properly distinguished M'Wanza from *Sessions v. State*. *Id*. at 4-5. While the district court in that case abused its discretion by adjudicating the defendant a habitual offender based on convictions that were two to three decades old, the district court in this case properly found that M'Wanza's criminal history "demonstrated a continuation of criminal conduct." *Id*. at 5.

The court based this conclusion on the fact that M'Wanza had felony convictions from 1981, 1983, 1984, 1987, 1988, 1997, and gross misdemeanors in 2006 and 2007 that were both charged as felonies but reduced per negotiations to gross misdemeanors. Exh. 24, p. 6. And although this ground for petition is premised on the fact that the court considered these last two non-felony convictions, M'Wanza has failed to identify a clearly established federal law that the district court's finding violated.

Finally, M'Wanza's assertion in ground 3(A)(5) that the district court failed to review the entire record to determine the validity of his plea is without merit. This court has already addressed the fact that the district court sufficiently canvassed M'Wanza during his change-of-plea hearing. During that hearing, the court also listed M'Wanza's prior convictions that resulted in him being adjudicated as a habitual offender, which he confirmed. Exh. 16, p. 8. Moreover, the district court ordered the transcript from this hearing when M'Wanza later asserted during the sentencing hearing that, even though his counsel had explained the habitual offender sentence to him, he did not understand

what it meant.[2]  Exh. 18A.  As the Nevada Supreme Court concluded, M'Wanza has failed to show that the district court committed error, and this court finds that he has failed to demonstrate a violation of a clearly established federal law.

Based on the foregoing, federal habeas relief is denied as to grounds 3(A)(3), 3(A)(4) and 3(A)(5).  The petition, therefore, is denied in its entirety.

### IV. **Certificate of Appealability**

This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).  Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA.  *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id*.

Having reviewed its determinations and rulings in adjudicating M'Wanza's petition, the court finds that none of those rulings meets the *Slack* standard.  The court therefore declines to issue a certificate of appealability for its resolution of any of M'Wanza's claims.

///

///

///

---

[2] The guilty plea agreement that M'Wanza signed states: "I stipulate that I will be adjudicated as a Habitual Criminal and that I will receive a sentence of sixty (60) to one hundred and fifty months (150) in the Nevada Department of Corrections."  Exh. 15, p. 1

9

V. **Conclusion**

**IT IS THEREFORE ORDERED** that the petition (ECF No. 4) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED this 24th day of March, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE